MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JUAN JOSE SANTILLAN, *individually and on behalf of others similarly situated*,

       Plaintiff,

  -against-

CUSTOM STAINLESS STEEL CORP. (d/b/a CENTER'S RESTAURANT EQUIPMENT), and WALTER HENAO,

       Defendants.
---------------------------------------------------------------X

**AFFIDAVIT OF JUAN JOSE SANTILLAN**

10 CV 3128

STATE OF NEW YORK  )
        ) ss:
COUNTY OF NEW YORK )

I, Juan Jose Santillan, being duly sworn and under penalty of perjury, depose and state as follows:

 1. I am a Plaintiff in the above-captioned action, and I have personal knowledge of the matters stated below.

 2. I reside in Queens County, New York.

 3. I was employed by Custom Stainless Steel Corp. ("Center's Restaurant Equipment") and Walter Henao ("Defendant Henao") together with Custom Stainless Steel Corp., ("Defendants"), the Defendants in the above-captioned action.

4. Defendant Walter Henao owns and operates a producer of customized stainless steel countertops and cabinets located at 74 and 82 George Street in Brooklyn under the name Center's Restaurant Equipment.

5. I worked at the Center's Restaurant Equipment from approximately May 2000 until on or about March 1, 2010.

6. I was stationed at both the 74 and the 82 George Street locations.

7. I was primarily employed as a metal worker by Defendants.

8. Throughout my employment with Defendants, my duties included welding, bending and polishing stainless steel, and cleaning the company's bathroom.

9. My duties at Center's Restaurant Equipment required neither discretion nor independent judgment.

10. From approximately May 2000 until on or about March 1, 2010, I regularly worked in excess of 40 hours per week.

11. My work responsibilities allowed me to see that some products used daily by Center's Restaurant Equipment such as metal polish and aluminum powder, and other supplies, were produced outside the State of New York.

13. From approximately June 2004 until on or about December 31, 2006, I worked a schedule from 7:00 a.m. to 4:00 p.m., six days per week (typically 54 hours per week).

14. During the same period, Defendants required me to continue working one or two hours past my scheduled departure time twice per week, and three hours past my scheduled departure time two or three times per month.

15. From on or about January 1, 2007 until on or about December 31, 2007, I worked a schedule from either 7:00 a.m. to 4:00 p.m. or from 8:00 a.m. to 5:00 p.m., six days per week (typically 54 hours per week).

2

16. However, during this period, Defendants required me to continue working one or two hours past my scheduled departure time twice per week, and three hours past my scheduled departure time two or three times per month.

17. From on or about January 1, 2008 to on or about March 1, 2010, I worked a schedule from 8:00 a.m. to 5:00 p.m., five days per week (typically 45 hours per week).

18. However, prior to approximately February 2009, Defendants required me to continue working one or two hours past my scheduled departure time twice per week, and three hours past my scheduled departure time two or three times per month.

19. Throughout my employment with the Defendants, I was paid in cash.

20. From approximately 2004 until December 2005, I was paid $650.00 per week.

21. During this period, I always received a fixed amount of $650.00 per week from Defendants, regardless of the hours I worked.

22. During this period, I never received compensation for the hours I was required to work beyond my regularly scheduled hours.

23. From approximately January 2006 until December 2007, I was paid $700.00 per week.

24. During this period, I always received a fixed amount of $700.00 per week from Defendants, regardless of the hours I worked.

25. Also during this period, I never received compensation for the hours I was required to work beyond my regularly scheduled hours.

26. From approximately January 2008 until March 2010, I was paid $740.00 per week.

27. During this period, I always received a fixed amount of $740.00 per week from Defendants, regardless of the hours I worked.

28. Also during this period, I never received compensation for the hours I was required to work beyond my regularly scheduled hours.

29. I repeatedly complained to Defendant Henao that I worked more than 40 hours per week, but I always received a fixed weekly amount of pay, regardless of how many hours I actually worked, and that I was not compensated for hours I was required to work beyond my regularly scheduled hours.

30. I never received any response to my complaints, and no corrective action regarding my salary was ever taken by Defendants.

31. I never received overtime pay (at time and a half) for hours worked in excess of 40 hours per week.

32. Prior to approximately January 2008, Defendants always paid me in cash. From approximately January 2008 to March 2010, Defendants paid me sometimes by check and sometimes in cash.

33. While working for Defendants, I was never provided with a W-2, or any other document that reflected the hours I worked (either daily, weekly, or by any other measure), my hourly rate of pay, overtime, or any other record or report regarding my pay, hours worked, or any deductions or credits taken against my wages.

34. Throughout my employment with Defendants, I was never provided with written information regarding minimum wage and overtime requirements under the New York State or federal laws.

35. During my employment, Defendants did not post or maintain any posters or state or federal notices with information about the minimum wage and overtime laws on the premises of Center's Restaurant Equipment.

36. Prior to February 2009, Defendants never required that I keep track of my time with a time sheet or any other written record.

37. Prior to February 2009, Center's Restaurant Equipment did not require that I punch a time card.

38. Prior to February 2009, there were no time cards available at Center's Restaurant Equipment.

39. Starting approximately in February 2009, Defendants sometimes required me to punch a time card when I would begin work and "punch out" when I would finish; however, they sporadically enforced the requirement and often did not require me to "punch in" and "punch out". Therefore, there was no continuous or consistent record kept of my hours worked from approximately February 2009 until on or about March 1, 2010.

40. There was no computer time tracking system or other automated system to track employee time at Center's Restaurant Equipment.

41. I was never paid overtime.

42. I respectfully submit this affidavit in support of my motion for default judgment.

43. This document has been translated to me in my native language of Spanish, and I fully comprehend the contents. ("Este documento ha sido traducido y yo comprendo todos los términos.").

_____
Juan Jose Santillan

Sworn to before me
This 15 day of January 2011.

_____
NOTARY PUBLIC

MICHAEL FAILLACE
NOTARY PUBLIC-STATE OF NEW YORK
No. 02FA6120964
Qualified In New York County
My Commission Expires January 03, 2013

5