MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JUAN JOSE SANTILLAN, *individually and on behalf of others similarly situated,*

                  *Plaintiff,*

   -against-

CUSTOM STAINLESS STEEL CORP. (d/b/a CENTER'S RESTAURANT EQUIPMENT), and WALTER HENAO,

                *Defendants.*
-----------------------------------------------------------------X

10 CV 3128 (FB) (MDG)

FLSA Collective Action

Affirmation of Michael A. Faillace, Esq. in Support of Plaintiff's Motion for Default

## APPLICATION FOR DEFAULT JUDGMENT

MICHAEL A. FAILLACE, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.    I represent the Plaintiff Juan Jose Santillan ("Plaintiff"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations. I submit this affirmation in support of Plaintiff's application for a default judgment pursuant to Fed. R. Civ. P. 55(b) (2) and Local Rule 55.2(b).

2. Plaintiff commenced this action by filing his Complaint (and associated documents) on July 8, 2010. A true and correct copy of the Complaint is attached hereto as "Exhibit A."

3. This is an action for unpaid wages, overtime, spread of hours pay, liquidated damages, interest, costs and attorneys fees under the Fair Labor Standards Act (29 U.S.C. 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Exhibit A, generally, Complaint (for description of the nature of the claim).

4. The Court has subject matter jurisdiction of the Plaintiff's federal claims 29 U.S.C. §§ 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). See Exhibit A, Complaint, generally, and at paragraphs 9-10.

5. The Court issued summons for Defendants, and thereafter, Defendant Custom Stainless Steel Corp. was served with process on July 29, 2010; and Defendant Walter Henao was served with process on July 27, 2010.

6. Defendants did not answer or otherwise respond to the Complaint.

7. Defendant Walter Henao is neither an infant nor an incompetent.

8. Plaintiff moved for entry of default on December 21, 2010. The Clerk of the Court then noted defaults against Defendants Custom Stainless Steel Corp. and Walter Henao on December 23, 2010.

9. Plaintiff incurred costs and attorneys fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs. A breakdown of attorney's fees and costs incurred

in filing the Complaint and seeking default, in the form of my firm's standard billing sheet is attached hereto as "Exhibit B".

10. Plaintiff seeks an award of damages in this motion for default judgment, and as such, asserts that definitive information and documentation such that the amount provided for in the proposed judgment can be calculated. However, in the event this requirement cannot be satisfied, Plaintiff seeks a default judgment as to liability, and request that damages be determined by an inquest, should the court deem these papers insufficient to support an award of damages at this juncture.

11. As alleged in the Complaint and accompanying Affidavit, Custom Stainless Steel Corp. (doing business as Center's Restaurant Equipment), a New York corporation, operates a company that produced customized stainless steel countertops and cabinets located at 74 and 82 George Street, Brooklyn, New York 11206. Complaint ¶ 2; Santillan Aff. ¶ 3-4.

12. Center's Restaurant Equipment is owned and operated by and through its owner, Defendant Walter Henao. Complaint ¶ 2-3.

13. Defendant Walter Henao employed Plaintiff Juan Jose Santillan to work for him at the restaurant equipment company from approximately May 2000 until on or about March 1, 2010. Complaint ¶ 12; Santillan Aff. ¶ 5.

14. Throughout Plaintiff's employ with Center's Restaurant Equipment, Defendant Henao had the power to hire and fire the Plaintiff, control terms and conditions of Plaintiff's employment, and determine the rate and method of Plaintiff's compensation. Complaint, ¶ 15.

15. Plaintiff was employed to weld, bend, and polish stainless steel for the restaurant equipment. He was also required to clean the bathroom in the factory at the end of the work day. Santillan Aff. ¶ 7-8.

16. Plaintiff's duties allowed him to see that the products received, used and sold by Center's Restaurant Equipment came from locations outside of New York State. Further, as a part of his duties, Plaintiff had to regularly handle and use these items in interstate commerce. Santillan Aff. ¶ 11.

17. Plaintiff's uncontested allegations provide the required support for a default judgment. See accompanying memorandum of law ("Mov. Mem.") Point I.

18. With respect to damages, the record supports an award to Plaintiff of back pay under the FLSA and applicable New York law; mandatory liquidated damages under the FLSA; prejudgment interest under New York law; and costs and attorneys' fees under the FLSA and New York Law. Mov. Mem., Points II.A-B, E-F.

19. Plaintiff repeatedly complained to Defendant Henao that he was working in excess of 40 hours per week, but still received the same salary. Santillan Aff. ¶ 29.

20. Defendants never responded to these complaints. Santillan Aff. ¶ 30.

21. The Defendants failed to post the legally required wage and hour information, or otherwise inform the Plaintiff of federal and state minimum wage and overtime requirements. Complaint, ¶¶ 41, 47; Santillan Aff ¶¶ 34-35.

22. Defendants neither kept records of hours the Plaintiff worked, nor required Plaintiff to keep track of the Plaintiff's hours worked. Complaint, ¶ 42; Santillan Aff. ¶¶ 36-40.

23. As a result of Defendants' actions, Plaintiff submits he is entitled to liquidated damages under the FLSA and the New York Labor Law and regulations.

24. Plaintiff is entitled to a three-year limitations period under the FLSA, and liquidated damages under New York law, as the uncontradicted evidence in the record supports a finding of willfulness. Mov. Mem., Points II.C-D.

25. A spreadsheet, detailing the amount of money Defendants owe Plaintiff, with attached explanation of the damages calculations contained therein, is attached hereto as "Exhibit C."

26. The damages amounts, shown in the accompanying spreadsheets (Exhibit C), are calculated as follows:

  a. *Total Damages* – The total damages chart summarizes the damages Plaintiff seeks in the action, and include attorney's fees and costs. The attorney's fees of $9,440, are set forth in detail in Exhibit B, and the costs referred to in the chart are the filing fees ($350) for the action, and for the process server's service of the Summons and Complaint ($90).

  b. *Minimum Wage and Overtime.*--As of 2001 the FLSA required that employees must be paid at least $5.15 per hour, and one-and-one-half times their regular rate for each hour worked over forty hours in a week. 29 U.S.C. § 207(a) (1). Thus, overtime work must be compensated at a rate of at least $7.73 per hour. In 2002, and through 2004, the minimum wage under New York law was the same as under the FLSA. The New York minimum wage range increased to $6.00 per hour as of January 1, 2005; $6.15 per hour as of January 1, 2006; and $7.15 as of January 1, 2007. N.Y. Labor Law § 652(1). New York's rules on overtime

explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour in excess of forty hours per week. 12 N.Y.C.R.R. § 142-2.2.

  c. 29 C.F.R. § 776.5 provides that required minimum wages and overtime are not dependent on the method of compensation of employees. That is, regardless of whether an employee is paid on piecework, hourly, commission, or other basis, the employee must be paid the equivalent of the required minimum wage rate and overtime rate for hours worked. Unpaid wages for each period are calculated as the difference between the lawfully required pay per week and the employee's actual pay per week, times the number of weeks in each time period. Lawful pay per week is the greater of the actual regular rate or the statutory minimum wage rate times hours worked per week up to 40 hours per week, plus the greater of the actual overtime rate or the lawful overtime rate times hours worked per week in excess of 40 hours per week. The actual regular rate is the actual weekly pay divided by the total hours worked per week. The actual overtime rate is 1.5 times the actual regular rate. 29 C.F.R. § 778.109; -.113(a).

  d. *Liquidated damages.*—From the inception of Plaintiff's employment to March 29, 2007 (three years before the Complaint was filed), liquidated damages on unpaid wages under the New York Minimum Wage law are computed at 25% of the unpaid wages. N.Y. Labor Law § 663(1). From July 8, 2007 to the date Plaintiff's employment was terminated, liquidated damages under the FLSA are equal to the amount of unpaid wages. 29 U.S.C. § 216(b). Liquidated damages on the spread-of-hours back pay and liquidated damages is computed as 25% of the spread-of-hours back pay and liquidated damages for the entire six-year period.

e.  *Prejudgment interest.*--Prejudgment interest under New York Law on unpaid overtime for each period from the inception of employment through July 8, 2007, is calculated at the rate of 9% per annum from the midpoint date of the period through the current date. N.Y.C.P.L.R. §§ 5001(a)-(b). Prejudgment interest under New York Law on the spread-of-hours pay is calculated at the rate of 9% per annum from the midpoint date of the period through the current date for the entire six-year period.

f.  *Base Data within the Chart* – In the damages chart, the Plaintiff's wage and hour damages (including unpaid wages, minimum wage damages, overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavit, lists the number of hours worked per week in each period ("Hours Per Week in Period). The next line indicates the number of days each week in that period for which each Plaintiff worked in excess of 10 hours per day, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period"). The next line in the chart automatically calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited" Weekly Pay) for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon each Plaintiff's affidavit. The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period.

g.   *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:

((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) +
((greater time and a half rate) * (Hours Per Week over forty, if any))

The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it, if it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.

The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number then when multiplied by the number of weeks in each period derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT).

The Chart then applies the liquidated damages provisions of the FLSA or NYLL (depending on the applicable time period) to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by multiplying the FLSA periods (after 7/8/07) by 100% (or doubling the damages) and multiplying the NYLL periods by 25%.

The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the base rate of pay (or minimum wage)). The liquidated damages on SOH pay are all calculated at the rate of 25%, as it is a New York State remedy outside of the FLSA.

Interest, where applicable, is calculated from the midpoint of each period to today's date, at the simple rate of 9% per annum. As the FLSA does not include interest (which is assumed part of the "liquidated" compensatory damages), no interest is charged where FLSA liquidated damages apply. Only the NYLL period 7/8/2004 up through until 7/8/2007 applies interest to the wage and OT claims, and 9% interest is applied to the SOH claims, as these are New York State remedies.

    h.    *Total damages.*--The resulting damages are totaled from each individual period's damage amounts for the sum of unpaid minimum wage, unpaid overtime, liquidated damages on unpaid minimum wage and overtime, and prejudgment interest on unpaid minimum wages and overtime.

    i.    *Costs and fees.*--The Plaintiff is also entitled to recover costs and reasonable attorneys' fees (mov. mem., Point II.F). The attorneys who worked on the case are Michael Faillace and Yolanda Rivero.

        i.    I am the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. From 1983 to 2000, I was in-house Employment Counsel with International Business Machines Corporation (IBM). I taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and I am a nationally-renowned speaker and writer on employment law. I also am the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law

      Institute (PLI), and other employment law publications and presentations.

  ii. Yolanda Rivero, Associate at Michael Faillace & Associates, P.C, is an attorney who has been in practice since 1998, and has concentrated her practice in FLSA matters since 2006.

  iii. The attorneys' time records are attached as Exhibit B, and are summed along with costs in the total damages chart summary (on the second page of the charts, Exhibit C).

27. Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendants in the amount of $58,554.57 for wage and hour damages, liquidated damages, prejudgment interest, attorney's fees and costs to the date of this affirmation. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

28. As shown in the accompanying memorandum of law, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty. <u>Mov. Mem., Point I</u>. The computation of damages in accordance with the methods described above is set forth in the accompanying spreadsheet (Exhibit C).

29. No part of the judgment sought has been paid.

30. Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

31.     Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

32.     The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

33.     For the reasons stated above and in the accompanying affidavit and exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
       January 21, 2010

_____
Michael Faillace [MF-8436]