UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

JUAN JOSE SANTILLAN, individually and
on behalf of others similarly
situated,                                     REPORT AND
                                              RECOMMENDATION
                        Plaintiffs,
                                              10 CV 3128 (FB)(MDG)
           - against -

WALTER HENAO and CUSTOM STAINLESS
STEEL CORP. doing business as
CENTER'S RESTAURANT EQUIPMENT,

                        Defendants.

- - - - - - - - - - - - - - - - - - X


        Plaintiff Juan Jose Santillan seeks recovery of unpaid wages

from defendants Custom Stainless Steel Corp. ("Custom Steel") and

Walter Henao (collectively "defendants"), asserting claims under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as

well as pendent state claims under the New York Labor Law. After

entry of default against the defendants, Judge Block referred this

action to me to report and recommend on liability and damages.

Defendants have not filed opposition to the plaintiff's Motion for

Default Judgment, nor have they appeared at any point in these

proceedings.

        After review of the submissions, this Court recommends an

award of damages to Juan Jose Santillan as set forth more fully

below.

**PERTINENT FACTS**

The following facts adduced from plaintiff's submissions are undisputed and this Court takes them as true for purposes of deciding this motion. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

From approximately May 2000 until on or about March 1, 2010, Plaintiff Juan Jose Santillan was employed by defendants to weld, bend, and polish stainless steel, as well as clean the company's bathroom. Complaint ("Compl.") at ¶¶ 27, 29. Although Santillan regularly worked more than forty hours per week, the defendants failed to "pay[ ] him the proper regular rate of pay, overtime wages, or spread of hours compensation." Id. at ¶¶ 32, 43. Although bringing this action as a putative class action on behalf of other employees, Mr. Santillan seeks in his submissions damages for only himself and has neither submitted any information on the propriety of class relief or amounts due to class members.

Plaintiff also seeks an award of prejudgment interest, attorneys' fees, and costs.

The details of the work performed and amounts claimed will be discussed below.

**DISCUSSION**

**I.  Governing Legal Standards**

In deciding whether a default judgment should be entered, a court may accept all well-pleaded allegations in the unanswered

complaint as true but must still satisfy itself that the plaintiff
has established a sound legal basis upon which liability may be
imposed. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d
Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2)
once a default is determined to require proof of necessary facts
and need not agree that the alleged facts constitute a valid cause
of action").

A defendant's default is an admission of all well-pleaded
factual allegations in the complaint except those relating to
damages. See Greyhound, 973 F.2d at 158; Au Bon Pain, 653 F.2d at
65. Nevertheless, "it remains for the court to consider whether the
unchallenged facts constitute a legitimate cause of action, since a
party in default does not admit conclusions of law." Leider v.
Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30,
2004) (quoting In re Indus. Diamonds Antitrust Litig., 119 F. Supp.
2d 418, 420 (S.D.N.Y. 2000)).

A default also effectively constitutes an admission that
damages were proximately caused by the defaulting party's conduct;
that is, the acts pleaded in a complaint violated the laws upon
which a claim is based and caused injuries as alleged. See
Greyhound, 973 F.2d at 159. The movant need prove "only that the
compensation sought relate[s] to the damages that naturally flow
from the injuries pleaded." Id. The court must determine the amount
of damages, actual or statutory, that may be assessed. The court
must also ensure that there is a reasonable basis for the damages

specified in a default judgment. The court has the discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination. See Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases); Fed. R. Civ. P. 55(b)(2). The moving party is entitled to all reasonable inferences from the evidence it offers. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65 (citing TWA, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

## II. **Liability**

### A. Fair Labor Standards Act

Plaintiff brings three claims under the FLSA, alleging that defendants violated sections 206, 207 and 211. See Compl. at ¶¶ 18-24, 37-41. The FLSA was enacted by Congress "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C § 202(a)) (footnote omitted). Section 206 of the FLSA sets forth a minimum hourly wage employers[1] must pay their

---

[1] The terms "employer" and "employee" are defined broadly under the FLSA. Section 203(d) defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee" while an "employee" is

(continued...)

-4-

employees who engage in work affecting interstate commerce, _id._
§ 206(a)(1)(C).

Section 207 specifies that an employer must pay employees who
work in excess of forty hours during a workweek for the excess
hours "at a rate not less than one and one-half times the regular
rate at which he is employed." 29 U.S.C. § 207(a)(1). Employers
in violation of this provision "shall be liable to the employee or
employees affected in the amount of . . . their unpaid overtime
compensation . . . and in an additional equal amount as liquidated
damages." _Id._ § 216(b).

In addition, section 211(c) of the FLSA requires that covered
employers "make, keep and preserve . . . records" of their
employees with respect to "wages, hours, and other conditions and
practices of employment" for a certain period of time. _Id._
§ 211(c). The information that must be kept in these records is
set forth in 29 C.F.R. § 516.2(a)(1)-(12).[2] Section 215(a)(5) of
the FLSA makes it unlawful for any employer covered under the
statute to violate any of these record-keeping provisions. _See_ 29
U.S.C. § 215(a)(5).

---

[1](...continued)
defined as "any individual employed by an employer." 29 U.S.C.
§ 203(d),(e)(1).

[2] Such regulations "have the force of law, and are to be
given controlling weight unless they are found to be arbitrary,
capricious, or manifestly contrary to statute." _Freeman v. Nat'l_
_Broadcasting Co._, 80 F.3d 78, 82 (2d Cir. 1996) (citations
omitted).

Plaintiff alleges in his complaint that defendants employed him and other similarly situated employees during the period from approximately May 2000 through March 1, 2010 in connection with a business in Brooklyn that produced customized stainless steel countertops and cabinets.  Compl. at ¶¶ 16-20.  During this period, the defendants were directly engaged in interstate commerce and had gross sales of at least $500,000.  Id. at ¶¶ 24-25.  From approximately June 2004 until December 2005, defendants paid Santillan $650.00 per week, $700.00 per week from approximately January 2006 until December 2007, and $740.00 per week from approximately January 2008 until on or about March 1, 2010.  Id. at ¶¶ 37-39.

During that time, Santillan typically worked more than 40 hours per week - - working approximately 58 hours per week from about June 2004 to December 31, 2007, approximately 49 hours per week from on or about January 1, 2008 to on or about January 31, 2009 and approximately 45 hours per week from February 1, 2009 to March 1, 2010.  Id. at ¶¶ 32-35; Santillan Aff. at ¶¶ 13-18.  Specifically, he states that from June 2004 until December 31, 2007, he typically worked nine hours a day, six days a week for a total of 54 hours, but was required to work "one or two hours past [his] scheduled departure time twice a week and three hours past [his] scheduled departure time two or three times per month."  Santillan Aff. at ¶¶ 13-16.  From January 1, 2008 until "prior to approximately February 2009," he typically worked nine hours a day,

five days a week for a total of 45 hours, but was also required to work "one or two hours past [his] scheduled departure time twice a week and three hours past [his] scheduled departure time two or three times per month." Santillan Aff. at ¶¶ 17-18. Given the inexactness of plaintiff's estimate of the frequency and duration of instances when he was asked to work beyond his regular schedule for the period from June 2004 to January 2009, I recommend crediting plaintiff's conservative estimate of two hours past his scheduled departure time twice per week, yielding 58 hours per week from June 2004 to December 31, 2007 and 49 hours per week from January 1, 2008 to January 31, 2009. See Application for Default Judgment, Exh. C (ct. doc. 14-3). This additional 16 hours per month is closer to the low end of his estimate of 14 hours per month (one hour twice per week and three hours twice per month) and the high end of 25 hours per month (two hours twice per week and three hours three times per month.

Even though defendants regularly required Santillan to work in excess of forty hours per week, they did not pay him overtime wages or spread of hours compensation, failed to provide "any document or other statement accounting for his actual hours worked," and "willfully disregarded and purposefully evaded" the recordkeeping requirements of the FLSA and New York Labor Law in order "to disguise the actual number of hours Plaintiff worked," and to avoid paying Santillan his overtime due and spread of hours pay. See Compl. at ¶¶ 40-42, 47-49.

Based on these undisputed allegations in the complaint and default submissions, the Court finds that liability is properly imposed against defendants for violations of the overtime provisions and record-keeping provision of the FLSA. However, based on the calculations set forth in greater detail below, Santillan never worked at a rate below the minimum wage requirement. Thus, his claims under section 206 are not viable.

B. New York Labor Law

New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, including the minimum wage during the relevant period. Chun Jie Yin, 2008 WL 906736, at *4; see N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1) (same); id. § 142-2.2 (same methods as employed in the FLSA for calculating overtime wages). The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages. See N.Y. Lab. Law § 198(3); Chun Jie Yin, 2008 WL 906736, at *6; Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006).

One notable difference in New York law is that it contains a "spread of hours" provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that an

employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  Section 663 of the Labor Law also expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute.  N.Y. Lab. Law § 663(1).  Like its federal counterpart, the Labor Law requires that employers maintain records for their employees who fall under the Labor Law's wage protections.  <u>See</u> N.Y. Lab. Law §§ 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 138-3.1 (specifying content of employer's records).

For the same reasons discussed above with respect to the FLSA, the allegations in the complaint and default submissions are sufficient to impose liability on defendants under the Labor Law's overtime provisions as well as its record-keeping requirement.  <u>See</u> <u>Debejian v. Atl. Testing Labs., Ltd.</u>, 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

Furthermore, the Court finds that plaintiff is entitled to recover his "spread of hours" pay under the Labor Law based upon the undisputed allegations that he worked over 10 hours approximately twice a week and was not given an extra hour's worth of wages at minimum wage for those days.

**III. <u>Damages</u>**

   A.   <u>Recoverable Damages</u>

Under the FLSA, plaintiffs who prevail under either section 206 or 207 are entitled to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Also, "a plaintiff who prevails on a cause of action under the state law is entitled to the full amount of wages owed, not just the statutory minimum wage for the hours worked."  <u>Chun Jie Yin</u>, 2008 WL 906736, at *4; <u>see also</u> N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action").  In addition, liquidated damages may be awarded under the FLSA, <u>see</u> 29 U.S.C. § 216(b), and for "willful" violations of the New York Labor Law in the amount of "twenty-five percent of the total amount of wages found to be due."  N.Y. Lab. Law § 198(1-a).

In calculating damages, this Court relies on the submissions of plaintiff and has not required a hearing.  The Second Circuit has expressly endorsed this approach so long as the court has "ensured itself that there was a basis for the damages specified in the default judgment."  <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3 105, 111 (2d Cir. 1997) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).  Plaintiff has submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and

-10-

recollection.  The information provided by plaintiff is general and not detailed.  However, in the default context, where the defendants have failed to dispute plaintiff's allegations, I find that plaintiff has provided a sufficient basis for determination of damages.

Generally, an employee-plaintiff under the FLSA "has the burden of proving that he performed work for which he was not properly compensated."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, et seq.  As the Supreme Court recognized in Anderson, "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  Id.  Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to "secur[e] the production of such records" from the employer, who has the duty for their maintenance under section 11(c) of the FLSA.  Id.  However, by defaulting, defendants have deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages.

In addressing the problem of proof faced by employees, the Supreme Court in Anderson held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of

-11-

just and reasonable inference." <u>Id.</u> As courts have found, a plaintiff can meet this burden "by relying on recollection alone." <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); <u>accord</u> <u>Park v. Seoul Broadcasting Sys. Co.</u>, No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. March 6, 2008); <u>Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ. 6048, 2007 WL 313483, at *24 (S.D.N.Y. Feb. 1, 2007). Moreover, "[i]n the absence of rebuttal by defendants," <u>Chen v. Jenna Lane, Inc.</u>, 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998), or "[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct," <u>Pavia v. Around the Clock Grocery, Inc.</u>, No. 03 CV 6465, 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." <u>Anderson</u>, 328 U.S. at 688.

New York law goes one step further and requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a. With this framework in mind, this Court proceeds to its calculation of damages.

    B.   <u>Determination of Damages</u>

        1.   <u>Overtime Wages</u>

Santillan seeks overtime compensation for which he was not paid, claiming that he "regularly worked in excess of [forty] hours

per week." Santillan Aff. ¶ 10.  Since Santillan commenced this action on July 8, 2010, he is entitled to unpaid overtime wages from six years before - - July 8, 2004.  N.Y. Labor Law § 663(3). Santillan relies on the hours set forth in his charts, which contains the estimated amount of time worked per week, including number of overtime hours and number of days in which spread of hours should have been paid. Santillan claims he worked 58 hours per week from July 8, 2004 to December 31, 2007 and 49 hours per week from January 1, 2008 to March 1, 2010. Faillace Aff., Exh C (ct. doc. 14-3). Santillan also claims a total of two spread-of-hours days per week throughout his employment. Id.  Santillan has calculated the overtime pay by multiplying the number of overtime hours by one-half of the hourly rate that he has calculated for his regular hours.

   _Determination of Hourly Wage_.  In order to calculate overtime wages owed, the court must first determine the "regular rate" received by plaintiff.  See 29 U.S.C. § 207(a)(1).  The regular rate is defined in the implementing regulations "as the hourly rate actually paid the employee for the normal nonovertime workweek for which [they are] employed."  29 C.F.R. § 778.108.  The regulation also makes clear that this regular rate "must be drawn from what happens under the employment contract."  Id.

   Because Santillan was compensated on a weekly basis, the regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate."  29

C.F.R. § 778.113. From July 8, 2004 to December 31, 2005, Defendants paid Santillan $650.00 per week for his work. I recommend finding that Santillan worked 58 hours per week during this time period; thus, his regular rate of pay was $11.21 per hour for the dates in question. From January 1, 2006 to December 31, 2007, Defendants paid Santillan $700 per week for his work. I recommend finding that Santillan worked 58 hours per week during this time period; thus, his regular rate of pay was $12.07 per hour during this time period. From January 1, 2008 to March 1, 2010, Defendants paid Santillan $740 per week for his work. I recommend finding that Santillan worked 49 hours per week from January 1, 2008 to January 31, 2009 and 45 hours per week from February 1, 2009 to March 1, 2010; thus his regular rate of pay was $15.10 per hour and $16.44 per hour, respectively. This is summarized below:

CALCULATION OF REGULAR RATE

| Dates | Weekly rate | Total hours per week | Regular rate: Weekly Pay / # hours |
|---|---|---|---|
| 7/8/2004 - 12/31/2005 | $650/week | 58 | $11.21 |
| 1/1/2006 - 12/31/2007 | $700/week | 58 | $12.07 |
| 1/1/2008 - 1/31/2009 | $740/week | 49 | $15.10 |
| 2/1/2009 - 3/1/2010 | $740/week | 45 | $16.44 |

*Determination of Overtime Pay.* The Court must then calculate overtime pay by multiplying the number of hours worked in a week

-14-

beyond 40 by the overtime rate, which is one-half of the hourly rate as discussed. See 29 C.F.R. §§ 778.108, 778.113. Thus, from July 8, 2004 to December 31, 2005, the 18 hours that plaintiff worked in excess of 40 hours per week are multiplied by $5.605. It therefore follows that Defendant failed to pay overtime wages totaling $100.89 per week during this time period. Since the time period in question is 77.4 weeks long, the defendant owes Santillan a total of $7,808.89 in overtime wages for this period. Likewise, from January 1, 2006 to December 31, 2007, the 18 hours that were worked in excess of 40 hours per week are multiplied by $6.035. Thus, Defendant failed to pay overtime wages totaling $108.63 per week during this time period. Since the time period in question is 104 weeks long, the defendant owes Santillan a total of $11,297.52 in overtime wages for this period. From January 1, 2008 to January 31, 2009, the 9 hours that Santillan worked in excess of 40 hours per week are multiplied by $7.55. Thus, Defendant failed to pay overtime wages totaling $67.95 per week during this time period. The time period in question is 56 weeks long, thus the defendant owes Santillan a total of $3,805.20 in overtime wages for this period. From February 1, 2009 to March 1, 2010, the 5 hours that plaintiff worked in excess of 40 hours per week are multiplied by $8.22. Thus, defendants failed to pay overtime totaling $41.10 per week during this time period. The time period in question is 56 weeks long, thus the defendant owes Santillan a total of $2,301.60 in overtime wages for this period. Thus, the total amount of

unpaid overtime wages due is $25,213.21.

CALCULATION OF OVERTIME PAY

| Dates | Hours worked over 40 | ½ of Regular Rate | Unpaid OT Wages per week | # of Weeks | Total OT Wages for time period |
|-------|------|------|------|------|------|
| 7/8/04– 12/31/05 | 18 | $5.605 | $100.89 | 77.4 | $7,808.89 |
| 1/1/06– 12/31/07 | 18 | $6.035 | $108.63 | 104 | $11,297.52 |
| 1/1/08– 1/31/09 | 9 | $7.60 | $67.95 | 56 | $3,805.20 |
| 2/1/09– 3/1/10 | 5 | $8.22 | $41.10 | 56 | $2,301.60 |
| | | | TOTAL | | $25,213.21 |

Thus I recommend that the Court award Plaintiff Santillan $25,213.21 in overtime wages.

3. Spread of Hours Pay Under New York's Labor Law

Plaintiff requests an award for "spread of hours" pay under New York's Labor Law for the "spread of hours interval." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.18. On those days when the interval between the beginning and end of an employee's workday exceeds 10 hours, New York law requires that the employee "receive one hour's pay at the basic minimum hourly wage rate." Id. § 142-2.4; see, e.g., Pavia, 2005 WL 4655383, at *8 (awarding spread of hours pay).

I recommend finding that Santillan regularly worked over ten

-16-

hours twice a week up until February 2009 and did not receive spread of hours pay. However, since plaintiff has not established that he worked in excess of nine hours per day after January 2009, I recommend that the Court not grant plaintiff's request for spread of hours pay from February 2009 through March 1, 2010.

The prevailing minimum wage from July 8, 2004 to December 31, 2004 was $5.15 per hour; in 2005, the rate was $6.00 per hour; in 2006, the rate was $6.75 per hour; and from January 1, 2007, to July 23, 2009, the rate was $7.15. As shown in the chart below, the defendants owe Santillan a total of $3,127.90 for spread-of-hours pay.

### Calculation of Spread of Hours

| Dates | Minimum wage/hour | # of spread-of-hour days | Spread-of-hours pay due for time period |
|-------|-------------------|--------------------------|------------------------------------------|
| 7/8/04-12/31/04 | $5.15 | 50 | $    257.50 |
| 1/1/05-12/31/05 | $6.00 | 104 | $    624.00 |
| 1/1/06-12/31/06 | $6.75 | 104 | $    702.00 |
| 1/1/07-1/31/09 | $7.15 | 216 | $ 1,544.40 |
|  |  | TOTAL | $ 3,127.90 |

### 4.    Liquidated Damages

Plaintiff seeks liquidated damages under both the FLSA and New York's Labor Law. Liquidated damages under the FLSA are "compensation to the employee occasioned by the delay in receiving

-17-

wages caused by the employer's violation of the FLSA." Herman v. RSR Secs. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999). In contrast, "liquidated damages under the Labor Law 'constitute a penalty,' to deter an employer's willful withholding of wages due." Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999). Because each award serves fundamentally different purposes, plaintiff may be granted both awards. See Maliza v. 2001 MAR-OS Fashion, Inc., No. CV-07-463, 2010 WL 502955, at *1 & n.4 (E.D.N.Y. Feb. 10, 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008); cf. Reilly, 181 F.3d at 265 (plaintiff may recover both liquidated damages under New York Labor Law and pre-judgment interest "because [they] serve fundamentally different purposes").

Section 216(b) of the FLSA provides that an employer shall be liable to the employees who are not paid overtime compensation "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, every action under the FLSA must "be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Thus, since this lawsuit was filed on July 8, 2010, the FLSA liquidated damages provision only applies from July 8, 2007, until the end of the employment on March 1, 2010. Accordingly, I find defendants liable for liquidated damages resulting from all counts of unpaid overtime wages arising after July 7, 2007. This amount

totals $8,822.55.

Since the New York Labor Law allows claims arising within six years as opposed to FLSA's three years, Santillan is entitled to twenty-five percent of unpaid overtime wages in liquidated damages for the time period not covered under the FLSA, provided the court finds that defendants acted "willfully" in violating the statute. See N.Y. Lab. Law § 198(1-a, 3). Willfulness, in this context, is found "where the employer, 'knowingly, deliberately, [or] voluntarily' disregards its obligation to pay wages." Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting P & L Group, Inc. v. Garfinkel, 541 N.Y.S.2d 535, 537 (2d Dep't 1989)); see also Centeno-Bernuy v. Becker Farms, 564 F. Supp. 2d 166, 181 (W.D.N.Y. 2008) ("[W]illfulness [for purposes of liquidated damages] is warranted if substantial evidence tends to demonstrate that the employer knew or should have known that it was violating the law.") (citing Consol. Masonry Contractors, Inc. v. Angello, 770 N.Y.S.2d 134, 136 (2d Dep't 2003)).

Many courts have found that a defendant's default, in itself, may suffice to support a finding of wilfulness. See, e.g., Blue v. Finest Guard Services, Inc., No. 09 CV 133, 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010); Dong v. CCW Fashion Inc., No. 06 Civ. 4973, 2009 WL 884680, at *4-5 (S.D.N.Y. Feb. 19, 2009); but see Aquilar v. E-Z Supply Corp., No. 06-CV-6790, 2008 WL 905224, at *5 (E.D.N.Y. Mar. 31, 2008). The circumstances of this case support a finding of wilfulness. Thus, I recommend that this Court award

-19-

liquidated damages under the New York Labor Law of $6,303.30 for the unpaid overtime wages, and $781.98 for the unpaid spread-of-hours.

In sum, Santillan is entitled to the following damages under the FLSA and Labor Law:

| Overtime Wages | $ 25,213.21 |
| Spread of Hours | $ 3,127.90 |
| Liquidated Damages (FLSA) | $8,822.55 |
| Liquidated Damages (NY) | $ 7,085.28 |
| TOTAL | $ 44,248.94 |

5. Prejudgment Interest

Plaintiff seeks prejudgment interest on unpaid wages owed to them under both the FLSA and New York's Labor Law. Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA. Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)) (additional citations omitted). However, the Second Circuit has also held that "[p]re-judgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws. Reilly, 181 F.3d at 265. As the Reilly court explained, "prejudgment interest" is meant "to compensate a plaintiff for the loss of use money," while, as discussed above, "liquidated damages under the Labor Law

-20-

'constitute a penalty.'" Id. (citations omitted).  Since
liquidated damages awarded under the FLSA for unpaid overtime is
designed to compensate employees for delay in payment, such damages
are the functional equivalent of prejudgment interest on the
overtime pay.  Plaintiff is therefore entitled to an award of
prejudgment interest only on unpaid wages and spread of hours pay
for which liquidated damages pursuant to the FLSA were not
assessed.

     Section 5001 of New York's Civil Practice Law and Rules
governs the calculation of prejudgment interest for violations of
the state's Labor Law.  See Pavia, 2005 WL 4655383, at *8.  Courts
ordinarily apply a statutory interest rate of nine percent per
annum in determining prejudgment interest under New York law.  N.Y.
C.P.L.R. § 5004.  Section 5001(b) sets forth two methods of
calculating prejudgment interest.  First, interest may be
calculated from "the earliest ascertainable date the cause of
action existed."  N.Y. C.P.L.R. § 5001(b).  However, "[w]here . . .
damages were incurred at various times, interest shall be computed
upon each item from the date it was incurred or upon all of the
damages from a single reasonable intermediate date.  Id.  To that
end, courts have "wide discretion in determining a reasonable date
from which to award pre-judgment interest."  Conway v. Icahn & Co.,
16 F.3d 504, 512 (2d Cir. 1994).  Here, because Santillan was
denied wages over a lengthy period of time during his employment
with defendants, the court employs the latter calculation method.

The court finds the midway point between when "plainitff[s] began and ceased working for defendant[s]" as a "reasonable intermediate date" for purposes of calculating prejudgment interest. <u>Pavia</u>, 2005 WL 4655383, at *8; <u>see also</u> <u>Liu</u>, 2004 WL 33412, at *5 (adopting counsel's 'midpoint of the accrual of damages" date). Accordingly, the intermediate date by which this Court will calculate prejudgment interest is May 6, 2007. Since the FLSA liquidated damages covered the causes of action arising after July 7, 2007, pre-judgment interest for unpaid overtime wages will only be applicable up until July 7, 2007. However, since the spread-of-hours pay is only covered under New York Labor Law, and not the FLSA, the entire period for which spread-of-hours pay was unpaid will be subject to prejudgment interest.

Santillan is thus entitled to the following 9% prejudgment interest under N.Y. C.P.L.R. § 5001 on his unpaid wages up to July 7, 2007 ($16,390.66) and spread of hours pay ($3,127.90). Defendants owe Santillan interest of $7,734.48 up to September 30, 2011 ($19,518.50 x 9% x 1608 days) and at a daily rate of $4.81 thereafter.

C.    <u>Attorney's Fees</u>

Both the FLSA and New York's Labor Law allow for an award of "reasonable" attorney's fees.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Plaintiff bears the burden of proving the reasonableness of the fees sought.  <u>See</u> <u>Savoie v. Merchants Bank</u>, 166 F.3d 456, 463 (2d Cir. 1999).

-22-

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee."  Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989); see also Perdue v. Kenny A., 130 S.Ct. 1662, 1672-73 (2010) (discussing lodestar methodology).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  "If such records are inadequate the Court may reduce the award accordingly."  Vernon v. Port Authority of New York and

New Jersey, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190.

Plaintiff seeks $9,440.00 in attorneys' fees. In his sworn declaration, Mr. Faillace, the managing member of Michael Faillace & Associates, recounts his legal experience and provides a time sheet describing the work performed and time that he and Yolanda Rivero spent on this matter. Mr. Faillace states that he is entitled to an hourly rate of $450 for his work on this matter. He seeks fees at a rate of $250 per hour for Ms. Rivero, an attorney at Mr. Faillace's firm, who has been practicing law since 1998. However, in the tabulation of attorneys' fees, there is $900 attributed to "TS" at an hourly rate of $450. Absent any explanation as to the identity of "TS" or her professional

experience, I recommend denying fees for work performed by "TS."

The "starting point for determination of a reasonable [hourly rate]" is based on "the fees that would be charged for similar work by attorneys of like skill in the area . . . ." Cohen v. W. Haven Bd. of Police Comm'rs, 638 F.2d 496, 506 (2d Cir. 1980). To that end, the court receives guidance from (1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties. See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted).

In his declaration, Mr. Faillace states he was in-house employment counsel at IBM and taught employment discrimination at Fordham Law School and Seton Hall Law School. He is also an author who was written about employment discrimination and other employment law matters.

However, the rate of $450 sought by plaintiff for Mr. Faillace's work is above the general range of rates received by similarly experienced attorneys in this district. As a preliminary matter, courts have found that the prevailing hourly rates for law firm partners in this district are between $300 and $400. See Concrete Flotation Sys., Inc. v. Tadco Construction Corp., No. 07-CV-319, 2010 WL 2539771, at *4 (E.D.N.Y. March 15, 2010) (collecting cases); Luca v. County of Nassau, 698 F. Supp. 2d 296, 301-02 (E.D.N.Y. 2010); Gutman v. Klein, No. 03 Civ. 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009); Whitney v. JetBlue Airways

Corp., No. 07-CV-1397, 2009 WL 4929274, at *7 (E.D.N.Y. Dec. 21, 2009); see also Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants") (citations omitted).

Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Arbor Hill, 522 F.3d at 184 n.2 (citations omitted). The nature of the work performed in this matter was relatively straightforward, particularly since the defendants defaulted, and no novel or complex issues were raised by plaintiff. The Second Circuit in Simmons v. N.Y. City Transit Auth., 575 F.3d 170 (2d Cir. 2009) clearly requires that the court "apply a presumption in favor of application" of the prevailing rate within the district. 575 F.3d at 175. In consideration of the sophistication of the work being done and the credentials of the attorneys working on this case, this Court finds it appropriate to award attorney fees at the rate of $375 per hour for Mr. Faillace and $250 per hour for Ms. Rivero.

Plaintiff seeks fees for 11.2 hours of work performed by Mr. Faillace and for 14 hours of work performed by Ms. Rivero. Thus, I recommend that the Court award plaintiff attorneys' fees of $7,770.00.

D.   <u>Costs</u>

Plaintiff requests an award of $440.00 for the filing fee and various costs. As a general matter, a prevailing plaintiff in an action under the FLSA or New York's Labor Law is entitled to recover costs from the defendant. <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  I find the amounts claimed to be reasonable and recommend that plaintiff be awarded costs of $440.00.

<b><u>CONCLUSION</u></b>

For the reasons stated above, I respectfully recommend that Santillan be awarded damages against the defendants in the amount of $60,193.42 as follows: (1) damages for unpaid overtime wages, spread of hours pay and liquidated damages under the FLSA and Labor Law in the amount of $44,248.94; (2) prejudgment interest up to September 30, 2011 of $7,734.48 and at a daily rate of $4.81 per day until entry of judgment; (3) attorneys' fees of $7,770.00; and (5) costs of $440.00.

A copy of this report and recommendation will be filed electronically and notice sent electronically or by regular mail to the parties on this date.  Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Frederic Block and the undersigned, by September 29, 2011. Failure to file objections within the time specified waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:     Brooklyn, New York
           September 12, 2011

                                    _____/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE